### O'ROURKE v. INTERBOROUGH RAPID TRANSIT CO.

(Supreme Court, Appellate Term.  February 23, 1905.)

STREET RAILWAYS—INJURY TO PASSENGER—NEGLIGENCE—EVIDENCE.

Negligence is not shown, but, if anything, contributory negligence, by evidence that, as a passenger who had been standing on the platform of a car of an elevated train started to enter the car, the guard closed the sliding door, jamming the passenger's fingers between the door and the sill; that the guard looked just before closing the door, and the passenger's hand was not on the sill; and that the passenger did not see that the door was being closed.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 1223, 1228½, 1307.]

Appeal from Municipal Court, Borough of Manhattan, Tenth District.

Action by James C. O'Rourke against the Interborough Rapid Transit Company.  From a judgment for plaintiff, defendant appeals.  Reversed.

Argued before SCOTT, GIEGERICH, and McCALL, JJ.

Charles A. Gardiner (Geo. C. Squires, of counsel), for appellant.
William W. Young, for respondent.

GIEGERICH, J.   The plaintiff boarded a car of one of the defend-
ant's elevated railroad trains, but, as there were no seats vacant, he
stood outside, on the platform.   At the next station a seat was vacat-
ed, and a friend who was with him, and had entered the car previously,
beckoned to him, and he started to enter.   As he was doing so, the
guard closed the sliding door, and the plaintiff's fingers were jammed
between the door and the upright frame against which it closed.   The
court below gave judgment against the defendant, who now appeals,
and claims that there was no proof of negligence, or, if there was such
proof, it equally showed contributory negligence.   The evidence bear-
ing directly on this point is found in the testimony of the plaintiff and
the guard who closed the door, and, being very brief, will be set forth
verbatim.

The following appears from the plaintiff's direct examination:

A. * * * I started to go in, and, as I started to go in, the guard slammed
the door and caught me on the fingers.   Q. Did you see the guard as he was
about to shut the door?   A. I saw him just as he was standing there.   Q.
Did you see the door as it was being shut?   Did you see him make the motion
to shut the door before the door struck you?   A. The first thing I knew, I
got it on the fingers.   Q. Were you walking into the car?   A. I was about
to enter the car.   Q. Did the guard give you any warning or any notice that
he was going to shut the door?   A. No; he did not warn me at all.

And the following from his cross-examination:

Q. And the door was coming this way (illustrating)?   A. Yes.   Q. And you
put your right hand over the place where the door would strike?   A. Yes;
exactly.

From the examination of the guard, this appears:

A. Well, after the train passed Franklin street I announced my station and
closed my door, and this man claimed he got his hand caught in the door
that I was after closing.   Q. That is the first you knew of it?   A. That is
the first I knew of it.   Q. Did you see his hand there at any time?   A. No,
sir; his hand was not there.

And from his cross-examination:

Q. You state that his hand was not on the sill when you shut the door?
A. Yes.   Q. Did you look at the door sill just before you looked at the door?
A. Yes.   Q. And his hand was not there?   A. His hand was not there.

From all this testimony it seems a fair and natural inference that the
act of the guard in closing the door, and of the plaintiff in placing his
hand on the door jamb, were simultaneous, and that the plaintiff placed
his hand in the way just as the door struck.   It might be more accu-
rate to call this an accident occurring without legal responsibility on the
part of any one, than to attempt by analysis to determine the questions
of negligence and contributory negligence.   If the latter is attempted,
however, it might well be claimed that the plaintiff, according to his
own direct examination, was in fault for not looking before him as he
started to enter the car.   That he did not so look is obvious from his
testimony that he did not see the door as it was being shut, nor the
motion of the guard in shutting it.   On the other hand, if negligence
on the part of the guard is sought for, none can be found.   The theory
of the plaintiff seems to be, judging by the questions asked, that the
guard should have made some announcement or warning before closing

the door. But as no one was in a position at the time to be hurt by the closing of the door, such a warning would have been superfluous as it would have been addressed only to those who intended to approach, but who would be amply warned by the motion of the door itself, and of the guard in closing it, if they were looking where they were going, as the guard would have a right to assume they would do. The present case is very different from those cited in support of the judgment. In McGlynn v. Brooklyn Crosstown R. Co., 6 N. Y. St. Rep. 51, the plaintiff's finger was cut off by a sudden closing of the door by the driver of the car before she could get off, and the court held that the driver "should have anticipated the chance that the plaintiff would sustain and steady herself by holding on the car until she was firm on the ground." Similarly, in Colwell v. Manhattan Ry. Co., 57 Hun, 452, 10 N. Y. Supp. 636, the plaintiff was in a position of manifest risk, to wit, in the open doorway, just as the car stopped, and, to steady herself against the stoppage of the car, had seized the door frame, when the trainmen who had opened the door, let it go, and it slammed upon her fingers. The same thing is true of Fordham v. London, Brighton & South Coast Railway Co., L. R. 3 C. P. p. 368. There the passenger was in the act of boarding the train, and had placed his hand on the back of the open door to aid him in mounting the step. Before he had entered the car, the guard closed the door and crushed his hand. In all these cases the passengers were in positions of risk obvious to the trainman. Here, however, there was nobody in any position of risk at the time the door was shut, but the assuming the position of risk and the shutting of the door were concurrent acts.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event. All concur.